UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TIMOTHY WHALEN,                    )
                                   )
                Petitioner,        )
                                   )
        v.                         )    No.  4:03CV1092 ERW
                                   )                    (FRB)
DON ROPER,                         )
                                   )
                Respondent.        )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This cause is before the Court on Missouri state prisoner
Timothy Whalen's pro se petition for writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  All pretrial matters were referred to the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(b) for appropriate disposition.

On February 19, 1999, a jury in the Circuit Court of
Jefferson County, Missouri, convicted Petitioner of one count of
Class A Assault First Degree, two counts of Class B Assault First
Degree, and three associated counts of Armed Criminal Action.
(Resp. Exh. A-III at 486, Exh. B. at 77-82.)  On April 13, 1999,
Petitioner was sentenced to consecutive terms of imprisonment of
twenty years and six years for his conviction of Class A Assault
and the associated conviction of Armed Criminal Action,
respectively; with such terms ordered to be served consecutively to
concurrent terms of imprisonment imposed on the remaining counts of
conviction, which aggregated five years; thereby resulting in a

total sentence aggregating thirty-one years' imprisonment. (Resp. Exh. A-III at 495-96, Exh. B at 95-99.) On May 16, 2000, the Missouri Court of Appeals affirmed Petitioner's convictions and sentences; but on July 10, 2001, upon transfer to the Missouri Supreme Court, Petitioner's convictions of Class B Assault First Degree were reversed, and the court directed verdicts for two counts of Assault Second Degree in their stead. State v. Whalen, 49 S.W.3d 181 (Mo. banc 2001). In all other respects, Petitioner's convictions and sentences were affirmed. Id. Petitioner's application for writ of certiorari to the United States Supreme Court was denied on November 13, 2001. (Petn. at 3.) In the meanwhile, on September 5, 2001, Petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. (Resp. Exhs. F, G.) On March 18, 2003, the Missouri Court of Appeals affirmed the denial of Petitioner's motion for post-conviction relief. Whalen v. State, 103 S.W.3d 828 (Mo. Ct. App. 2003) (per curiam). Petitioner pursued no other action for collateral relief in state court. The instant petition for writ of habeas corpus, verified by Petitioner on August 5, 2003, was received by this Court on August 8, 2003, and filed on August 28, 2003, upon Petitioner being granted leave to proceed in the cause in forma pauperis.

Petitioner is currently incarcerated at Potosi Correctional Center in Mineral Point, Missouri. Inasmuch as

Petitioner is challenging a sentence to be served in the future, Missouri Attorney General Jeremiah W. "Jay" Nixon should be added as a proper party respondent. Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts. In his petition for writ of habeas corpus, Petitioner raises three claims for relief:

    (1)   That he received ineffective assistance of trial counsel in that counsel pursued a defense at trial which was legally and factually invalid;

    (2)   That the trial court erred in denying Petitioner's motion for change of venue; and

    (3)   That the trial court erred in submitting an instruction to the jury on voluntary intoxication.

In response, Respondent argues that all of the claims raised in the instant petition are without merit and should be denied.

## I. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state

remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error. Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. Rhines v. Weber, 544 U.S. 269 (2005).

A review of the record shows all of the claims raised in the instant petition to be exhausted inasmuch as Petitioner properly raised the claims in state court upon which the state court determined their merits. This Court thus turns to the merits of Petitioner's claims.

## II. Claims Addressed on the Merits

A. Ground 1 – Assistance of Counsel

In Ground 1 of the instant petition, Petitioner claims that he received ineffective assistance of trial counsel in that counsel's strategy to pursue a defense of mental disease or defect was deficient inasmuch as such defense was legally and factually

invalid in the circumstances of the case. Petitioner argues that if counsel had conducted a proper legal investigation prior to trial, he would have learned that this proffered defense was invalid and would have instead pursued a theory of self-defense, which had more likelihood of success. Petitioner raised this claim in his motion for post-conviction relief and on appeal of the denial of the motion. Upon review of the merits of the claim, the Missouri Court of Appeals denied Petitioner relief. (Resp. Exh. J.)

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591

(8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

In the underlying criminal cause of action, the facts adduced at trial were summarized on direct appeal by the Missouri Supreme Court as follows:

> Timothy Whalen lived in a mobile home with his wife Misty and young child. He lost his job and became convinced that a conspiracy existed to do him harm. His behavior caused his wife and parents to become concerned, and, on January 28, 1998, his father threatened to involuntarily commit him the next day. Mr. Whalen agreed to enter the hospital of his own volition, but stated that he wanted to rest first.
>
> That night, in the early morning hours of January 29, 1998, Police Officer Taylor knocked on the door of the Whalens' trailer and said, "Open up, it's the police." Mr. Whalen went into the bedroom, grabbed a gun, and began yelling that the person at the door was not really from the police. Mrs. Whalen answered the door anyway, and the officer explained that he was responding to a 911 hang-up call made from the residence. Mrs. Whalen told Officer Taylor that she had not made a 911 call. She also said that her husband was having a mental breakdown and wanted to go to the hospital, but that they had no need for the police. Officer Taylor left the doorstep, but went back to his

- 6 -

cruiser and waited for backup help to arrive.

In the meantime, Mr. Whalen told his wife that he wanted an ambulance and demanded proof that Officer Taylor was really a policeman. The 911 operator called the Whalen home and stayed on the line with Mrs. Whalen, who told the operator that her husband had a gun. Corporal Cummines and Deputy Edler eventually arrived. All three entered the Whalens' home and spoke with Mrs. Whalen about her husband's situation. Officer Taylor determined that it would be dangerous for an ambulance to come until Mr. Whalen was in control and arranged for it to wait elsewhere. During this time, Mr. Whalen continued to yell about the conspiracy, to demand to see police identification, and to ask that the ambulance lights be turned on.

Mrs. Whalen testified at trial that she told the officers not to go near the bedroom as her husband had a gun, and one of the officers acknowledged he was told about the gun. Nonetheless, the three officers decided to approach the bedroom, with Corporal Cummines leading the way. The testimony is consistent that the other two officers were walking behind Corporal Cummines and a bit to either side of him, but from the record it is impossible to determine their exact position.

As Corporal Cummines stopped at the bedroom doorway, he drew his service revolver and turned to motion to the others to stop. At that moment, Mr. Whalen fired, very seriously injuring the corporal with a single 12-gauge shotgun blast to the head. Although the other two officers were not close enough to the doorway to be able to see Mr. Whalen at the time he fired the shot, they were close enough so that Deputy Edler felt hot air and a stinging sensation on his face and hand, which required a tetanus shot, while Officer Taylor felt a hot flash on his cheek and was also treated at the hospital.

After the officers were taken to the

> hospital, a member of the sheriff's department
> emergency response team negotiated with Mr.
> Whalen. At one point during the negotiations,
> Mr. Whalen leaned out of the bedroom window
> and shouted that he had shot one person, and
> that if anybody came into the trailer, he
> would shoot another. Eventually, Mr. Whalen
> was taken into custody without further
> incident.

Whalen, 49 S.W.3d at 183-84.[1]

At trial, Petitioner's counsel pursued the defense that Petitioner was suffering from a mental disease or defect at the time of the shooting. Petitioner argues that the decision to pursue this defense constituted ineffective assistance inasmuch as evidence existed and was adduced that Petitioner had voluntarily ingested a controlled substance at the time and that Missouri law precludes the defense of mental disease or defect when the psychosis is drug-induced.

At trial, evidence was adduced that prior to November 1997, Petitioner had occasionally ingested marijuana and methamphetamine and that, for one or two months prior to January 29, 1998, Petitioner had ingested methamphetamine on a daily basis. (Resp. Exh. A-II at 330, 352-53.) It was during this two-month period that Petitioner's behavior had been described as increasingly strange. (Id. at 353-54.) Dr. Rabun, a court-appointed psychiatrist, testified to his opinion that at the time

---

[1]Inasmuch as Petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

of the offense, Petitioner was suffering from a mental disease as defined under Missouri law, and specifically, amphetamine-induced psychotic disorder. (Resp. Exh. A-III at 409, 418, 421.) Dr. Rabun further testified that Petitioner most likely also suffered from bipolar disorder and that "the drugs could have mobilized or started or sparked that illness." (Id. at 410.) Dr. Rabun testified that Petitioner's mental disease was a psychotic disorder, a real psychosis "that only takes place after months or possibly even years of [drug] use" as opposed to "intoxication" which "is usually a one-time taking of a substance" (id. at 417), and that a person need not be presently ingesting drugs to suffer from such psychosis (id. at 417-18). Dr. Rabun also testified that his review of records documenting Petitioner's family's medical history and his interviews with family members showed Petitioner to possibly be predisposed to suffering from mental disease. (Resp. Exh. A-III at 426-27.) It was this testimony of Dr. Rabun upon which counsel based his argument to the jury that Petitioner's actions were on account of a debilitating mental disease and not on account of an intoxicating event. (Id. at 458-78.)

Upon conclusion of the trial, the trial court instructed the jury as to the defense of mental disease or defect, including that:

> [I]f you . . . find and believe by the greater
> weight of the credible evidence: First, that
> at the time of [the] conduct, the defendant

had a mental disease or defect, and Second, that, as a result of it, he was incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct, then you must find the defendant not guilty . . . by reason of a mental disease or defect excluding responsibility.

(Resp. Exh. B at 59-60, 64-65, 70-71.)

The State objected to this instruction, arguing that Petitioner's defense of mental disease or defect was precluded under Missouri law by Petitioner's voluntary use of methamphetamine in relation to the offenses charged. (Resp. Exh. A-III at 446.) In response, defense counsel argued that there was sufficient evidence adduced at trial from which the jury could find that Petitioner's mental condition at the time of the offenses constituted a mental disease or defect under Missouri law. (Id. at 446-47.) The trial court overruled the State's objection and proceeded to give the instruction. (Id. at 447.)

Upon request of the State, however, the trial court also gave the following instruction, known as the "voluntary intoxication" instruction: "[I]n determining the defendant's guilt or innocence, you are instructed that an intoxicated or drugged condition from drugs will not relieve a person of responsibility for his conduct." (Resp. Exh. B at 73.) Defense counsel objected to this instruction, arguing that the giving of such an instruction would be inconsistent with instructing the jury that they could acquit the petitioner by reason of mental disease or defect.

(Resp. Exh. A-III at 447-48.)  The court overruled the objection,
stating:

> There is evidence that Defendant's use of an
> intoxicant, methamphetamine, if the jury
> chooses not to believe the psychiatrist's
> testimony that he was suffering mental disease
> or defect, they should be instructed that they
> are free to believe that there was some use of
> methamphetamine.  They may find that from the
> evidence that it was being used and therefore
> that is not a defense to the conduct.  So I
> think it's appropriate to give this.

(Id. at 448.)

Under Missouri law, "A person who is in an intoxicated or
drugged condition, whether from alcohol, drugs or other substance,
is criminally responsible for conduct *unless* such condition is
involuntarily produced and deprived him of the capacity to know or
appreciate the nature, quality or wrongfulness of his conduct."
Mo. Rev. Stat. § 562.076.1 (1994) (emphasis added).  As such,
voluntary intoxication cannot provide an insanity defense "'absent
a separate mental disease that results in diminished capacity
without the voluntarily ingested drugs.'"  Mouse v. State, 90
S.W.3d 145, 149 (Mo. Ct. App. 2002) (quoting State v. Rhodes, 988
S.W.2d 521, 526 (Mo. banc 1999)).

> A mental disease or defect is defined as
> "any mental abnormality regardless of its
> medical label, origin, or source," MAI-CR 3d
> 308.03, and includes "congenital and traumatic
> mental conditions as well as disease."  §
> 552.010, RSMo 1994.  Mental diseases and

> defects do *not* include "alcoholism *without
> psychosis* or drug abuse *without psychosis* . .
> . ." *Id.* (Emphasis added). "Psychosis" is
> defined as "[a] severe mental disorder in
> which the patient departs from the normal
> pattern of thinking, feeling, and acting.
> There is generally a loss of contact with
> reality." Black's Law Dictionary 1227 (6th
> ed. 1990). Section 552.010 specifically
> excludes alcohol or drug abuse from the
> definition of "mental disease or defect"
> unless it is accompanied by a severe mental
> disorder, evincing the legislature's intent to
> include only those conditions attributable to
> a severe mental disorder within the definition
> of "mental disease or defect."

State v. Brown, 996 S.W.2d 719, 731 (Mo. Ct. App. 1999).

At the evidentiary hearing conducted on Petitioner's post-conviction motion, trial counsel testified that he had researched the state of Missouri law as to whether and to what extent voluntary intoxication may negate a defense of mental disease or defect and that he was prepared to argue to the court against the State's submission of the voluntary intoxication instruction given the evidence of Petitioner's psychosis. (Resp. Exh. F at 40-42.) Counsel testified that when weighing the decision to pursue a defense of mental disease or defect, he believed it significant and favorable that the opinion of a neutral, court-appointed psychiatrist supported such a position. (Id. at 38-39.) Counsel further testified that beyond the psychiatrist's evaluation, it was evident that Petitioner had a psychiatric history and acted as he did at the time of the offense

because of his psychotic, paranoid state of mind. (<u>Id.</u> at 36, 43-44.) Counsel testified that he determined not to pursue a defense of self-defense, although urged by Petitioner, inasmuch as it would be difficult in the circumstances of this case to argue that Petitioner acted reasonably, which is a required element of self-defense. (<u>Id.</u> at 36.) Counsel further testified that to adequately present such a defense, Petitioner would have to testify at trial but that he considered such a circumstance to be "a very risky proposition" given Petitioner's emotional, medicated and unresponsive mental state at the time of trial. (Resp. Exh. F at 36-37.) Finally, counsel testified that while he was aware that the issue of voluntary intoxication would be problematic, such issue would be a "problem no matter what your defense is," even self-defense. (<u>Id.</u> at 41.)

Upon review of this record, the Missouri Court of Appeals found counsel's determination to pursue a psychiatric defense rather than one of self-defense not to constitute ineffective assistance:

> [W]e find that trial counsel made a conscious strategic decision to pursue a psychiatric defense rather than self-defense after investigating each defense and presenting the advantages and disadvantages to Movant. Counsel asserted numerous reasons for why he chose a psychiatric defense over self-defense. When counsel has investigated possible theories, we will rarely second-guess the actual decision made. <u>Middleton v. State</u>, 80 S.W.3d 799, 806 (Mo. banc 2002). "Strategic

choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>Strickland[ v. Washington</u>, 466 U.S. 668, 690 (1984)]. *See also* <u>Middleton</u>, 80 S.W.3d at 806.

Moreover, it is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another, even if the latter would also be reasonable. <u>Clayton v. State</u>, 63 S.W.3d 201, 207-08 (Mo. banc 2001). Reasonable strategic decisions do not translate into ineffective assistance of counsel claims just because a jury rejects the theory of the case. <u>State v. Harris</u>, 870 S.W.2d 798, 816 (Mo. banc 1994).

In the case at hand, counsel's tactical decision to pursue a psychiatric defense was made after investigation and discussions with Movant. At the time the decision was made it was reasonable, and we refuse to use hindsight to second-guess the strategic decisions of counsel.

(Resp. Exh. J at 5.)

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. <u>Id.</u> at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u> at 688. The petitioner bears a heavy burden

in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." _Id._ at 689. Indeed, a strong presumption exists that counsel's conduct "might be considered sound trial strategy." _Strickland_, 466 U.S. at 689 (internal quotation marks and citation omitted). Decisions relating to trial strategy are "virtually unchallengeable." _Id._ at 690. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." _Id._ at 694.

A review of the record in this case shows counsel to have investigated Missouri law governing the possible defenses of mental disease or defect and of self-defense and to have determined in the circumstances of this case to proceed on the psychiatric defense inasmuch as the evidence was more favorable thereto, Petitioner would not have to testify, and voluntary intoxication would be an issue regardless of the defense presented. The determination as to what theory of defense to pursue is a decision left to counsel as a matter of trial strategy. _See_ _United States v. Washington_, 198 F.3d 721, 723-24 (8th Cir. 1999) (strategic decisions left to counsel include all trial decisions other than the decision to plead guilty, waiving a jury trial, testifying on one's own behalf, and taking an appeal). Contrary to Petitioner's argument, a

defense of mental disease or defect is not rendered invalid *per se* where there is evidence of a criminal defendant's voluntary intoxication. As set out above, Missouri law provides for such an insanity defense where there is evidence of a separate mental disease that results in the defendant's diminished capacity without the voluntarily ingested drugs. A review of the evidence adduced at trial and the arguments of counsel shows counsel's strategy was to persuade the jury that Petitioner's criminal conduct resulted from a longitudinal psychotic disorder and not on account of an intoxicating event, that is, drugs ingested at or near the time of the offense. Indeed, recognizing that these were fact questions to be determined by the jury, the trial court submitted to the jury relevant instructions relating to the defense of mental disease or defect. As demonstrated above and by a review of the record in this case, counsel's decision to pursue this defense was made after a thorough investigation of the relevant facts and law related thereto. In the circumstances of this case, therefore, as determined by the post-conviction motion court and the Missouri Court of Appeals, it was reasonable for counsel as a matter of trial strategy to pursue this viable defense of mental disease or defect. See Lyons v. Luebbers, 403 F.3d 585, 594 (8th Cir. 2005) (reasonable performance of counsel includes adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories); see also James v. Iowa, 100

F.3d 586, 590 (8th Cir. 1996) (strategy need not be successful to be reasonable under Strickland); cf. Strickland, 466 U.S. at 690-91 (strategic choices by counsel based on incomplete investigation not entitled to deference); Antwine v. Delo, 54 F.3d 1357, 1367 (8th Cir. 1995) (same).

In its opinion, the Missouri Court of Appeals set out and applied the Strickland standard for ineffective assistance of counsel and found counsel's challenged conduct relating to his pursuit of a psychiatric defense to constitute sound trial strategy, and thus not to rise to the level of ineffective assistance. For the reasons set out above, this decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 1 of the instant petition should be denied. 28 U.S.C. § 2254(d).

B.    Ground 2 – Change of Venue

In his second ground for relief, Petitioner claims that the trial court erred in denying his motion for change of venue inasmuch as extensive pretrial publicity tainted the jury to such a degree that it could not have been impartial in its decision

making.  Petitioner raised this claim on direct appeal upon which the Missouri Supreme Court denied relief.  State v. Whalen, 49 S.W.3d 181 (Mo. banc 2001).

A review of the record in this cause shows that prior to the commencement of voir dire examination, the trial court addressed the venire panel regarding the possible effect of pretrial publicity in the case:

> This case by virtue of its nature has been the subject of some publicity in both newspapers and in the electronic media.  In that regard some of the members of this jury panel may have been exposed to some news stories about this case which were published or broadcast at the time of the incident, at the time of the arrest or perhaps at the time of some of the pretrial proceedings in this case.  In that regard the Court will be asking you some questions of you [sic] to ascertain whether any of you have been so exposed, and if so, whether that would create a situation that would indicate that you should be excused from serving as one of the jurors in this case.  If any of the questions apply to you, please raise your hand.  We will make a note of your number and who you are, so that we may have some followup questions for you at a later time in the voir dire process.
>
> . . . .
>
> First, you should each understand that both the State of Missouri and the Defendant are entitled under the law to a fair trial.  Both are entitled to have a jury decide the case based solely on the evidence presented here in court and not on some thing a juror may have seen or heard prior to arriving here in court today.

(Resp. Exh. A-I at 2-3.)

The court then proceeded to ask a series of questions relating to the venire panel's exposure to pretrial publicity and what effect, if any, such exposure would have upon each individual venire member's ability to fairly and impartially adjudicate the case. (Id. at 3-14.) Upon conclusion of the entire voir dire process, the trial judge dismissed ten venire members for cause on the court's own motion based upon statements they made in response to questions about pretrial publicity, and specifically, those jurors who answered affirmatively to the court's questions as to whether they had formed an opinion about the case based on their exposure to media accounts; or whether they would find it difficult or impossible to be fair to one side or the other, and to render a fair and impartial verdict in the case based on what they had heard in the media accounts. (Id. at 11, 14, 150.) After the court's striking of other venire members for cause on matters unrelated to pretrial publicity, a petit jury was selected from those venire members who remained. (Id. at 150-57.) Petitioner then renewed his motion for change of venue, which was denied. (Resp. Exh. A-I at 157-58.)

On direct appeal, the Missouri Supreme Court identified that the relevant inquiry to be made as to change of venue issues was not merely "whether there was publicity surrounding the crime, or whether the prospective jurors in a case remembered the

publicity or the crime; the critical question is whether the jurors had such fixed opinions that they could not impartially judge the defendant's guilt." <u>Whalen</u>, 49 S.W.3d at 189 (citation omitted). Engaging in this inquiry, the court found the trial court not to have erred in denying Petitioner's motion for change of venue, specifically finding, first, that the trial of the case took place over thirteen months after the offenses occurred, and, most significantly, that the jurors who served on the petit jury indicated during voir dire examination that they could be unbiased and impartial:

> [T]he court and both attorneys thoroughly questioned prospective jurors concerning their views about the case and identified those who were affected by pretrial publicity. In fact, the trial judge dismissed ten venirepersons for cause on the court's own motion based upon statements they made in response to questions about pretrial publicity. While Mr. Whalen argues that the court should also have dismissed jurors Ebert and Naucke, it was not required to do so. As Mr. Whalen specifically points out in his brief, although they acknowledged that they had previously discussed the case and their opinions about the events with other individuals, they also stated during voir dire that they had not made up their minds about the case. They and the other jurors who served indicated that they could be unbiased and impartial.

<u>Id.</u>

At the time Petitioner's conviction became final, the law was clearly established that the Sixth Amendment right to jury

trial guarantees a criminal defendant a fair trial "by a panel of impartial, 'indifferent' jurors.  The failure to accord an accused a fair hearing violates even the minimal standards of due process. A fair trial in a fair tribunal is a basic requirement of due process." Groppi v. Wisconsin, 400 U.S. 505, 509 (1971) (internal quotation marks and citations omitted).  While the jury's verdict must be based on evidence adduced at trial, qualified jurors need not be totally ignorant of the facts and issues involved in the case. Murphy v. Florida, 421 U.S. 794, 799-800 (1975); Groppi, 400 U.S. at 509.  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Irvin v. Dowd, 366 U.S. 717, 723 (1961). However, if a petitioner can demonstrate the *actual existence* of such an opinion in the mind of the juror, partiality is presumed. Murphy, 421 U.S. at 800.

As set out above, the Missouri Supreme Court articulated the appropriate standard for addressing due process claims relating to pretrial publicity and venue and determined the record to show that the jurors who served on the petit jury indicated that they could be unbiased and impartial in rendering their verdict, and that nothing demonstrated otherwise.  Indeed, as noted by the court, the two jurors specifically challenged by the Petitioner indicated during voir dire examination that they had not reached any conclusions regarding the case despite their exposure to

pretrial publicity. A juror's mere exposure to news accounts of the crime with which a defendant is charged does not alone presumptively deprive the defendant of due process. <u>Murphy</u>, 421 U.S. at 799. Further, a review of the record shows the trial court to have taken precautions to assure the selection of an unbiased jury, as demonstrated by its introductory remarks made to the venire panel, the thoroughness with which it questioned the venire members as to their knowledge and opinions regarding the case, and the emphasis with which it stressed to the panel that the case is to be decided solely on the evidence adduced at trial. All potential jurors who expressed that they had formed opinions or beliefs about the case or indicated that they could not be fair and impartial were excused by the court and not considered further. Although two seated jurors indicated that they had heard about the case, Petitioner raised no specific objection at trial to the seating of these jurors, and, as noted by the Missouri Supreme Court, the record shows the jurors to have stated that they had not made up their minds regardless of such publicity. Nothing suggests these jurors not to have answered open and honestly. <u>Cf.</u> <u>id.</u> at 802-03 (length to which trial court went to select jurors who appeared impartial relevant in evaluating jurors' assurances of impartiality). In sum, Petitioner has failed to show that any member of the petit jury was tainted by actual prejudice due to pretrial publicity. Nor has Petitioner demonstrated that the

extent of the pretrial publicity itself so corrupted the trial atmosphere such that prejudice should be presumed.  Cf. id. at 798-99 (citing circumstances where the extreme nature and extent of the press coverage itself gave rise to a presumption that such coverage prejudiced the fairness of the trial).

In its opinion, the Missouri Supreme Court set out and applied the standard for determining whether pretrial publicity warranted a change of venue in the case and found the voir dire process to have thoroughly examined any potential juror bias and to have resulted in the seating of jury which was unbiased and impartial.  For the reasons set out above, this decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established federal law.  28 U.S.C. § 2254(d)(1).  Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 2 of the instant petition should be denied.  28 U.S.C. § 2254(d).

C.    Ground 3 – Instruction on Voluntary Intoxication

In his third ground for relief, Petitioner claims that he was denied due process of law by the trial court's instruction to the jury that a drugged condition will not relieve a person of responsibility for his conduct inasmuch as such instruction

prevented the jury from considering Petitioner's defense of non-responsibility due to mental disease or defect. Petitioner raised this claim on direct appeal and, upon review of the merits of the claim, the Missouri Supreme Court denied Petitioner relief. <u>Whalen</u>, 49 S.W.3d at 188-89.

As discussed <u>supra</u> at Section II.A, Petitioner pursued the defense of mental disease or defect at trial, presented evidence thereto, and successfully argued to the trial court that the jury should be instructed on such a defense. As noted by the trial court, there was also evidence adduced at trial that Petitioner had voluntarily ingested methamphetamine at or near the time of the offense. As such, the court determined that the State was entitled to have the jury instructed as to voluntary intoxication. From the trial court's ruling, it is evident that the court found there to be a question of fact relating to the nature of Petitioner's mental state at the time of the offense, specifically noting that the jury may choose not to believe the psychiatrist's testimony that Petitioner was suffering from a mental disease or defect and could instead choose to believe that there was some use of methamphetamine. Inasmuch as voluntary intoxication does not negate *per se* a psychiatric defense, <u>see</u> discussion <u>supra</u> at pp. 11-12, 15, instructing the jury as to both voluntary intoxication *and* Petitioner's defense of mental disease or defect does not appear, in the circumstances of this case, to be

inconsistent.  The Missouri Supreme Court agreed:

> Mr. Whalen has failed to cite any case law in support of his contention that [the voluntary intoxication instruction] conflicts with the substantive law of non-responsibility due to mental disease or defect, and no such conflict exists.  As such, the trial court properly submitted [the voluntary intoxication instruction].  Further, Dr. Rabun testified that Mr. Whalen suffered from an amphetamine-induced psychotic disorder, and Mr. Whalen was allowed to submit and argue his instruction on non-responsibility due to mental disease or defect.  It is not apparent how this affirmative defense, submitted and argued, was rendered impotent by [the voluntary intoxication instruction].

Whalen, 49 S.W.3d at 188-89.

Accordingly, the Missouri Supreme Court determined the instruction on voluntary intoxication not to have prevented the jury from considering Petitioner's defense of mental disease or defect.

At the time Petitioner's conviction became final, the law was clearly established that a defendant in a criminal trial has a constitutional right to be convicted only upon the State's proof and a jury's finding beyond a reasonable doubt that he committed every essential element of the offense charged.  Patterson v. New York, 432 U.S. 197 (1977) (State bears burden of proof); In re Winship, 397 U.S. 358, 361-64 (1970) (proof beyond reasonable doubt required to establish guilt).  The State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.  See Sandstrom v.

<u>Montana</u>, 442 U.S. 510, 520-21 (1979).  Instructions which do not have the effect of lessening the State's burden of proof on the offenses charged do not violate <u>Winship</u>'s due process guarantee. <u>Martin v. Ohio</u>, 480 U.S. 227 (1987); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 342-43 (1993) (dictum).  Jury instructions challenged under state law do not provide a basis for federal habeas relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991).

Petitioner claims that the instruction at issue prevented the jury from considering his defense of non-responsibility due to mental disease or defect in violation of his right to due process. Petitioner does not allege, however, that this instruction had the effect of relieving the State of its burden of proof.  Under Missouri law, a defense of mental disease or defect excluding responsibility is an affirmative defense upon which a criminal defendant bears the burden of proof by a preponderance of the evidence.  <u>See</u> <u>State v. Moss</u>, 789 S.W.2d 512, 514 (Mo. Ct. App. 1990); <u>e.g.</u>, <u>State v. Vivone</u>, 63 S.W.3d 654, 661 (Mo. Ct. App. 1999).  In <u>Gilmore v. Taylor</u>, 508 U.S. 333 (1993), a federal habeas petitioner raised a claim similar to that raised by Petitioner here, that is, that "confusing instructions on state law which prevent a jury from considering an affirmative defense . . . violate due process."  <u>Id.</u> at 344.  While recognizing the State's argument that trial court error in instructing on an affirmative defense which does not lessen the State's burden of proving every

element of the offense beyond a reasonable doubt is one wholly of state law, the Supreme Court determined it unnecessary to decide this precise question in resolving the issue of retroactivity which was raised in the case.  Id. at 341.  The undersigned notes, however, that the Supreme Court nevertheless addressed the issue:

> Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error.  To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief.  *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
>
> Moreover, under the standard fashioned in *Boyde*[ *v. California*, 494 U.S. 370 (1990)], the relevant inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  494 U.S., at 380, 110 S.Ct., at 1198.  In *Boyde*, the petitioner argued that the trial court's instruction on California's "catchall" factor for determining whether a defendant should be sentenced to death restricted the jury's consideration of certain mitigating evidence.  Since "[t]he Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence," *id.,* at 377-378, 110 S.Ct., at 1196, this evidence was plainly constitutionally relevant.  In this case, by contrast, petitioner argues that the challenged instructions prevented the jury from considering evidence of his affirmative defense.  But in a noncapital case such as this there is no counterpart to the Eighth Amendment's doctrine of "constitutionally relevant evidence" in capital cases.
>
> . . . The most that can be said of the

> instructions given at respondent's trial is
> that they created a risk that the jury would
> fail to consider evidence that related to an
> affirmative defense, with respect to which
> *Winship*'s due process guarantee does not
> apply. See *Martin v. Ohio,* [480 U.S. 228
> (1987)]; *Patterson v. New York,* [432 U.S. 197
> (1977)].

<u>Taylor</u>, 508 U.S. at 342-43.

The Supreme Court also rejected Taylor's claim to the extent he argued that such instructions violated his Sixth Amendment right to present a defense, reasoning that such an expansion of the right "would make a nullity of the rule reaffirmed in <u>Estelle v. McGuire</u>, <u>supra</u>, that instructional errors of state law generally may not form the basis for federal habeas relief." <u>Id.</u> at 344.

In the instant cause, it cannot be said that the giving of the voluntary intoxication instruction violated Petitioner's right to due process. Petitioner does not allege, nor does the record show, that this instruction lessened the State's burden to prove beyond a reasonable doubt that Petitioner committed all of the elements of the offenses charged. Indeed, a review of the instructions in their entirety shows the jury to have been instructed as to all elements of the offenses with which Petitioner was charged, and that it could find Petitioner guilty of any charged offense only if it found beyond a reasonable doubt that Petitioner committed every element of that offense and that Petitioner had not proved his affirmative defense. (Resp. Exh. B

at 48-93.)  See <u>Boyde v. California</u>, 494 U.S. 370, 378 (1990) ("'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'") (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47 (1973)). Contrary to Petitioner's assertion, the jury was not precluded from considering his psychiatric defense but instead was expressly instructed to acquit Petitioner if it found the greater weight of the evidence to demonstrate that mental disease or defect as defined under state law rendered Petitioner not responsible for the criminal conduct.  The voluntary intoxication instruction did not serve to negate Petitioner's defense in this case nor instructed that Petitioner's defense could not be considered.  Instead, as found by the trial court and as affirmed by the Missouri Supreme Court, the factual circumstances of the case dictated the giving of the instruction for the jury to consider *in the event* the jury chose not to believe Petitioner's evidence that he suffered from a mental disease or defect at the time of the offense.  Such is consistent with Missouri law.  To the extent Petitioner claims otherwise, a challenge to a jury instruction on the basis that it violated state law is not cognizable in a federal habeas proceeding.  <u>Estelle</u>, 502 U.S. at 71-72.

Inasmuch as the challenged instruction did not relieve the State of its burden to prove the elements of the offenses nor shifted the burden of proof to Petitioner with respect to such

elements, Petitioner's contention that the voluntary intoxication instruction given at his trial caused the jury to fail to consider his affirmative defense is insufficient to demonstrate that his conviction violated the Due Process Clause. <u>Martin</u>, 480 U.S. 233; <u>Taylor</u>, 508 U.S. at 343 (dictum). The Missouri Supreme Court's decision to deny Petitioner relief on this claim was not "contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 3 of the instant petition should be denied. 28 U.S.C. § 2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Missouri Attorney General Jeremiah W. "Jay" Nixon be added as a proper party respondent pursuant to Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

**IT IS FURTHER RECOMMENDED** that petitioner Timothy Whalen's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket No. 4) be dismissed without further proceedings.

The parties are advised that they have to and including

**June 5, 2006**, by which to file written objections to this Report and Recommendation.  Failure to timely file objections may result in waiver of the right to appeal questions of fact.  <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).




<u>*Frederick R. Buckles*</u>
UNITED STATES MAGISTRATE JUDGE




Dated this  <u>*24th*</u>  day of May, 2006.