UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WHALEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No.  4:03CV1092 ERW |
| | ) | (FRB) |
| DON ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the Report and Recommendation of United States

Magistrate Judge Frederick R. Buckles [doc. #16], which was submitted pursuant to 28 U.S.C. §

636(b).  Timothy Whalen ("Petitioner") has filed an Objection to portions of the Report and

Recommendation [doc. #18].  When a party objects to a magistrate's report and recommendation,

the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations

to which the party objects.  *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing

28 U.S.C. § 636(b)(1)).

## I.  BACKGROUND

A summary of the underlying facts of this case is set forth in great detail in the Missouri

Supreme Court's opinion on direct appeal:

> Timothy Whalen lived in a mobile home with his wife Misty and young child.  He lost
> his job and became convinced that a conspiracy existed to do him harm.  His behavior
> caused his wife and parents to become concerned, and, on January 28, 1998, his
> father threatened to involuntarily commit him the next day.  Mr. Whalen agreed to
> enter the hospital of his own volition, but stated that he wanted to rest first.  That
> night, in the early morning hours of January 29, 1998, Police Officer Taylor knocked
> on the door of the Whalens' trailer and said, "Open up, it's the police."  Mr. Whalen

1

went into the bedroom, grabbed a gun, and began yelling that the person at the door was not really from the police. Mrs. Whalen answered the door anyway, and the officer explained that he was responding to a 911 hang-up call made from the residence. Mrs. Whalen told Officer Taylor that she had not made a 911 call. She also said that her husband was having a mental breakdown and wanted to go to the hospital, but that they had no need for the police. Officer Taylor left the doorstep, but went back to his cruiser and waited for backup help to arrive. In the meantime, Mr. Whalen told his wife that he wanted an ambulance and demanded proof that Officer Taylor was really a policeman. The 911 operator called the Whalen home and stayed on the line with Mrs. Whalen, who told the operator that her husband had a gun. Corporal Cummines and Deputy Edler eventually arrived. All three entered the Whalens' home and spoke with Mrs. Whalen about her husband's situation. Officer Taylor determined that it would be dangerous for an ambulance to come until Mr. Whalen was in control and arranged for it to wait elsewhere. During this time, Mr. Whalen continued to yell about the conspiracy, to demand to see police identification, and to ask that the ambulance lights be turned on. Mrs. Whalen testified at trial that she told the officers not to go near the bedroom as her husband had a gun, and one of the officers acknowledged he was told about the gun. Nonetheless, the three officers decided to approach the bedroom, with Corporal Cummines leading the way. The testimony is consistent that the other two officers were walking behind Corporal Cummines and a bit to either side of him, but from the record it is impossible to determine their exact position. As Corporal Cummines stopped at the bedroom doorway, he drew his service revolver and turned to motion to the others to stop. At that moment, Mr. Whalen fired, very seriously injuring the corporal with a single 12-gauge shotgun blast to the head. Although the other two officers were not close enough to the doorway to be able to see Mr. Whalen at the time he fired the shot, they were close enough so that Deputy Edler felt hot air and a stinging sensation on his face and hand, which required a tetanus shot, while Officer Taylor felt a hot flash on his cheek and was also treated at the hospital. After the officers were taken to the hospital, a member of the sheriff's department emergency response team negotiated with Mr. Whalen. At one point during the negotiations, Mr. Whalen leaned out of the bedroom window and shouted that he had shot one person, and that if anybody came into the trailer, he would shoot another. Eventually, Mr. Whalen was taken into custody without further incident.

*State v. Whalen*, 49 S.W.3d 181, 183-84 (Mo. 2001).[1]

The Magistrate Judge, in issuing the Report and Recommendation, correctly summarized the

procedural background as follows:

---

[1]Because Petitioner has not come forward with clear and convincing evidence to rebut these state court factual findings, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On February 19, 1999, a jury in the Circuit Court of Jefferson County, Missouri, convicted Petitioner of one count of Class A Assault First Degree, two counts of Class B Assault First Degree, and three associated counts of Armed Criminal Action. (Resp. Exh. A-III at 486, Exh. B. at 77-82.) On April 13, 1999, Petitioner was sentenced to consecutive terms of imprisonment of twenty years and six years for his conviction of Class A Assault and the associated conviction of Armed Criminal Action, respectively; with such terms ordered to be served respectively to concurrent terms of imprisonment imposed on the remaining counts of conviction, which aggregated five years; thereby resulting in a total sentence aggregating thirty-one years' imprisonment. (Resp. Exh. A-III at 495-96, Exh. B at 95-99.) On May 16, 2000, the Missouri Court of Appeals affirmed Petitioner's convictions and sentences; but on July 10, 2001, upon transfer to the Missouri Supreme Court, Petitioner's convictions of Class B Assault First Degree were reversed, and the court directed verdicts for two counts of Assault Second Degree in their stead. *State v. Whalen*, 49 S.W.3d 181 (Mo. banc 2001). In all other respects, Petitioner's convictions and sentences were affirmed. *Id.* Petitioner's application for writ of certiorari to the United States Supreme Court was denied on November 13, 2001. (Petn. at 3.) In the meanwhile, on September 5, 2001, Petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. (Resp. Exhs. F, G.) On March 18, 2003, the Missouri Court of Appeals affirmed the denial of Petitioner's motion for post-conviction relief. *Whalen v. State*, 103 S.W.3d 828 (Mo. Ct. App. 2003) (per curiam). Petitioner pursued no other action for collateral relief in state court. The instant petition for writ of habeas corpus, verified by Petitioner on August 5, 2003, was received by this Court on August 8, 2003, and filed on August 28, 2003, upon Petitioner being granted leave to proceed in the cause *in forma pauperis*. Petitioner is currently incarcerated at Potosi Correctional Center in Mineral Point, Missouri.

Rep. and Rec. at 1-2.

In his petition for writ of habeas corpus, Petitioner presents the following three grounds for relief: (1) he received ineffective assistance of trial counsel in that counsel pursued a defense at trial which was legally and factually invalid; (2) the trial court erred in denying his motion for change of venue; and (3) the trial court erred in submitting an instruction to the jury on voluntary intoxication. In the Report and Recommendation, the Magistrate recommends that all three grounds upon which Petitioner is seeking habeas corpus relief be denied. Petitioner objects to the Report and

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Recommendation in part. Specifically, he argues that the Magistrate incorrectly analyzed his claims with respect to Grounds One and Three.[2]

## II.    DISCUSSION

The Court will review *de novo* those specific portions of the Report and Recommendation to which Petitioner has objected. *See Lothridge*, 324 F.3d at 600. Petitioner makes two objections, and the Court will address each in turn.

Section 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d)(1)-(2). The federal law must be clearly established at the time the petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 381 (2000). A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. *Id.* at 412-413; *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001). Further, a state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. *Carter*, 255 F.3d at 592 (citing *Williams*, 529 U.S. at 407). Importantly, "federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." *Id.* (quoting *Williams*, 529 U.S. at 410-11).

_____

[2]Petitioner states that he does not object to the Magistrate's recommendation that Ground Two be denied.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

A.        Ground One: Ineffective Assistance of Counsel

At trial, Petitioner's counsel argued that Petitioner was suffering from a mental disease or defect when he shot at the police officers. Petitioner claims that this defense was pursued instead of the self-defense theory he had urged. Petitioner argues that counsel's decision to pursue a defense of mental disease or defect constituted ineffective assistance because such a defense would inevitably fail given that there was evidence that Petitioner had voluntarily ingested a controlled substance at the time of the shooting. In resolving Petitioner's claim in Ground One, the Magistrate found that the Missouri courts correctly concluded that counsel's decision to pursue a defense of mental defect did not constitute ineffective assistance because it was a strategic decision made after a careful investigation of facts and law. In his Objection, Petitioner does not point to any specific factual or legal error committed by the Magistrate. Instead, he repeats his original argument as to Ground One, contending that this Court should come to a conclusion different than that arrived at by the Magistrate.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Id*. at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. Indeed, a strong presumption exists that counsel's conduct "might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted). Decisions relating to trial strategy

5

are "virtually unchallengeable." *Id*. at 690. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

After the trial court denied Petitioner's post-conviction motion, Petitioner appealed the decision to the Missouri Court of Appeals. Upon review of the record, which included an evidentiary hearing on Petitioner's post-conviction motion,[3] the Missouri Court of Appeals found that counsel's decision to pursue a psychiatric defense rather than self-defense did not constitute ineffective assistance:

> [W]e find that trial counsel made a conscious strategic decision to pursue a psychiatric defense rather than self-defense after investigating each defense and presenting the advantages and disadvantages to Movant. Counsel asserted numerous reasons for why he chose a psychiatric defense over self-defense. When counsel has investigated possible theories, we will rarely second-guess the actual decision made. *Middleton v. State*, 80 S.W.3d 799, 806 (Mo. banc 2002). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland[ v. Washington*, 466 U.S. 668, 690 (1984)]. *See also Middleton*, 80 S.W.3d at 806.
>
> Moreover, it is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another, even if the latter would also be reasonable. *Clayton v. State*, 63 S.W.3d 201, 207-08 (Mo. banc 2001). Reasonable strategic decisions do not translate into ineffective assistance of counsel claims just because a jury rejects the theory of the case. *State v. Harris*, 870 S.W.2d 798, 816 (Mo. banc 1994).
>
> In the case at hand, counsel's tactical decision to pursue a psychiatric defense was made after investigation and discussions with Movant. At the time the decision was made it was reasonable, and we refuse to use hindsight to second-guess the strategic decisions of counsel.

---

[3] At the hearing, counsel testified that the decision to pursue a psychiatric defense was made after careful deliberation of various factors such as the issue of voluntary intoxication in the context of Missouri law, the supportive testimony of a court-appointed psychiatrist, and the desire to keep Petitioner off the stand.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Resp. Exh. J at 5.

As the Magistrate correctly concluded, the Missouri courts' determination that Petitioner did not receive ineffective assistance of counsel when counsel chose to pursue a psychiatric defense was not contrary to federal law and did not involve an unreasonable application of federal law. 28 U.S.C. §2254(d). Moreover, Petitioner has not demonstrated that the courts' determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. §2254(d)(2). The Missouri courts applied the *Strickland* standard and applied it in a reasonable manner. Indeed, a review of the record in this case shows that counsel investigated Missouri law governing Petitioner's possible defenses, including that of mental disease or defect and of self-defense. Counsel made an informed and strategic choice to proceed on the psychiatric defense because he felt the evidence was more favorable to that defense, Petitioner would not have to testify, and the evidence of voluntary intoxication would be an issue regardless of what defense was presented. The determination as to what theory of defense to pursue is a decision left to counsel. *See United States v. Washington*, 198 F.3d 721, 723-24 (8th Cir. 1999) (strategic decisions left to counsel include all trial decisions other than the decision to plead guilty, waiving a jury trial, testifying on one's own behalf, and taking an appeal). As emphasized by the Magistrate, a defense of mental disease or defect is not rendered invalid *per se* where there is evidence of a criminal defendant's voluntary intoxication.[4] As set out in detail in the Magistrate's Report and Recommendation, counsel's decision to pursue this defense was made after a careful and

_____

[4]Under Missouri law, voluntary intoxication, accompanied by a "separate mental disease that results in a diminished capacity without the voluntarily ingested drugs," may suffice to provide a psychiatric defense. *Mouse v. State*, 90 S.W.3d 145, 149 (Mo. Ct. App. 2002) (quoting *State v. Rhodes*, 988 S.W.2d 521, 526 (Mo. banc 1999)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

complete investigation of the relevant law and facts related thereto. *See* Rep. and Rec. at 8-13. Under the circumstances of this case, as determined by the post-conviction motion court and the Missouri Court of Appeals, counsel's decision to pursue the psychiatric defense in question was reasonable as a matter of trial strategy. *See Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005) (reasonable performance of counsel includes adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories). Therefore, pursuant to 28 U.S.C. § 2254(d), the claim raised in Ground One of the Petition provides no basis for relief.

B.    Ground Three: Instruction on Voluntary Intoxication

In his third ground for relief, Petitioner claims that he was denied due process of law by the trial court's instruction to the jury that a drugged condition will not relieve a person of responsibility for his conduct. According to Petitioner, this instruction prevented the jury from considering his defense of non-responsibility due to mental disease or defect.[5]  In resolving Petitioner's claim in Ground Three, the Magistrate concluded that there was no due process violation because the trial court's instruction on voluntary intoxication did not lessen the burden of proof that the state carried, did not negate Petitioner's psychiatric defense, and was consistent with Missouri law. The Magistrate further concluded that,  to the extent that Petitioner claims the trial court's instruction was inconsistent with state law, he does not raise a cognizable federal habeas claim. *See* Rep. and Rec. at 28-30. In his Objection, Petitioner does not point to any specific factual or legal error committed by the Magistrate. Instead, he repeats his original argument as to Ground Three, again contending that this Court's resolution should differ from that of the Magistrate.

---

[5]The trial court found existing a question of fact with regard to Petitioner's state of mind at the time of the shooting and ruled that instructing the jury on both voluntary intoxication and non-responsibility due to mental disease or defect was proper.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

A defendant in a criminal trial has a constitutional right to be convicted only upon the state's proof and a jury's finding beyond a reasonable doubt that he committed every essential element of the offense charged. *Patterson v. New York*, 432 U.S. 197, 215 (1977) (state must prove every ingredient of an offense beyond a reasonable doubt); *In re Winship*, 397 U.S. 358, 361 (1970) (requirement that guilt of a criminal charge be established by proof beyond reasonable doubt). The state must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. *See Sandstrom v. Montana*, 442 U.S. 510, 520-21 (1979). Instructions which do not have the effect of lessening the state's burden of proof on the offenses charged do not violate *Winship*'s due process guarantee. *Martin v. Ohio*, 480 U.S. 228, 232 (1987). Importantly, jury instructions challenged under state law do not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

In reviewing Petitioner's claim on direct appeal, the Missouri Supreme Court found:

> Mr. Whalen has failed to cite any case law in support of his contention that [the voluntary intoxication instruction] conflicts with the substantive law of non-responsibility due to mental disease or defect, and no such conflict exists. As such, the trial court properly submitted [the voluntary intoxication instruction]. Further, Dr. Rabun testified that Mr. Whalen suffered from an amphetamine-induced psychotic disorder, and Mr. Whalen was allowed to submit and argue his instruction on nonresponsibility due to mental disease or defect. It is not apparent how this affirmative defense, submitted and argued, was rendered impotent by [the voluntary intoxication instruction].

*Whalen*, 49 S.W.3d at 188-89. Accordingly, the Missouri Supreme Court determined the instruction on voluntary intoxication did not prevent the jury from considering Petitioner's defense of mental disease or defect.

As the Magistrate correctly concluded, the Missouri Court's determination as to Petitioner's jury instruction claim was not contrary to federal law and did not involve an unreasonable application

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of federal law. *See* 28 U.S.C. §2254(d)(1). Moreover, Petitioner has not demonstrated that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." *See* 28 U.S.C. §2254(d)(2). While Petitioner claims that the instruction at issue prevented the jury from considering his psychiatric defense in violation of his right to due process, he makes no allegation that this instruction relieved the state of its burden of proof. Indeed, the challenged instruction did not relieve the state of its burden to prove the elements of the offenses of which Petitioner was accused, and it did not shift the burden of proof to Petitioner. Thus, the instruction did not violate due process. *See Martin*, 480 U.S. at 232. Further, any claim that the jury instruction at issue here merely violated state law is not cognizable in a federal habeas proceeding. *See Estelle,* 502 U.S. at 71-72. Therefore, Petitioner's contention that the voluntary intoxication instruction caused the jury to fail to consider his affirmative defense is insufficient to demonstrate that his conviction violated due process. *See Martin*, 480 U.S. at 232. In any event, the giving of the voluntary intoxication instruction was entirely proper. In the event the jury chose not to believe Petitioner's claim that he suffered from mental disease or defect at the time of the shooting, the jury would need the voluntary intoxication instruction.[6] Therefore, pursuant to 28 U.S.C. § 2254(d), the claim raised in Ground Three of the Petition provides no basis for relief.

---

[6]As the Magistrate correctly concluded, because voluntary intoxication does not necessarily negate a psychiatric defense, instructing the jury on both voluntary intoxication and Petitioner's affirmative defense of mental disease or defect does not appear to be inconsistent. Further, the Magistrate correctly concluded that Petitioner's assertion that the jury was precluded from considering his psychiatric defense is misplaced because, in contrast to that assertion, the jury was expressly instructed to acquit Petitioner if it found the greater weight of the evidence to demonstrate that mental disease or defect, as defined under state law, rendered Petitioner not responsible for his criminal conduct.

The Court hereby sustains, adopts, and incorporates herein the Magistrate's Report and Recommendation, as supplemented by this Court's independent analysis.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Timothy Whalen's § 2254 Petition [doc. #4] is **DENIED**.

Dated this <u>11th</u> day of August, 2006.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com